UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

KEITH MARTIN MOLINEAUX, JR.,

    Plaintiff,

v.                                      Case No. 2:12-cv-09451

JIM RUBENSTEIN, Commissioner,
West Virginia Division of Corrections, and
DAVID BALLARD, Warden, Mount Olive
Correctional Complex,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDATION**

On December 12, 2012, the plaintiff, an inmate at the Mount Olive Correctional Complex ("MOCC"), filed an Application to Proceed Without Prepayment of Fees and Costs (ECF No. 3) and a Complaint (ECF No. 1), alleging that the defendants violated his Fourth, Fifth and Fourteenth Amendment rights because they failed to provide him with information that allegedly served as a basis to place him in the administrative segregation unit at MOCC.  Also pending before the court is the plaintiff's Motion to Amend Complaint (ECF No. 12), in which the plaintiff seeks to add additional defendants who were allegedly present during his administrative segregation hearing. This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## **STANDARD OF REVIEW**

Pursuant to the provisions of 28 U.S.C. § 1915A, the court screens each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  On review, the court must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court further explained its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.,* at 556. * * *  In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.[1]

## THE PLAINTIFF'S ALLEGATIONS

The plaintiff's Complaint states as follows:

> I filed a grievance and completed that whole procedure and was denied every time. I then filed an Administrative Appeal in the Circuit Court of Fayette County which they sent to the Circuit Court of Kanawha County [sic] Circuit Court which they denied all my constitutional rights of Due Process and violated 4th and 5th Amendment rights. Such as (1) Ad Seg Committee had failed to provide information to the petitioner of statements indicated by a confidential informant that petitioner was a threat to the facility; (2) Committee had failed to provide the petitioner with <u>any</u> charge or allegations of how the petitioner is a threat to the facility; (3) Ad Seg Committee had failed to provide the petitioner with a fair opportunity to defend himself by failing to provide any allegation(s) complaints against him; (4) Ad Seg Committee had failed to make any reliable determination of the information provided by the so-called confidential informant(s); (5) Ad Seg Committee had denied the petitioner the right call and present evidence [and] also to call witnesses.

(Complaint, ECF No. 1, at 4-5). The plaintiff seeks the following relief:

> (1) To be released from Administrative Segregation and the Quality of Life Program; (2) To be given back all status warranted as if this situation had not occurred; (3) To be given back his (my) job at Food Service Department "M.D.R." along with back wages. I did enough time in this cell 24 hr. a day. My health is failing. I can't get the proper help with legal matter. Release me without having to go and defend myself in another unfair prison hearing. I did enough time without a write up. Release me. This cell is effecting [sic; affecting] my mind and health.

(*Id.* at 5-6).

The plaintiff has also attached the brief and orders from the plaintiff's administrative appeal in the Circuit Court of Kanawha County, which was found to have

---

[1] Because service of process has not occurred, a motion to dismiss has not been filed in this case. Such a motion, filed pursuant to Rule 12(b)(6), *Fed. R. Civ. P.*, asserts that the complaint fails "to state a claim upon which relief can be granted," which is the same standard set forth in 28 U.S.C. § 1915A.

3

been improperly filed as an administrative appeal. (ECF No. 1, Attach. 1). The administrative appeal brief indicates that, on or about September 17, 2009, the plaintiff witnessed two fights that occurred on the recreational yard of the Stuart Hall unit, in the general population area of MOCC. (*Id.* at 5). The administrative appeal brief further indicates that the plaintiff was physically searched and questioned about who was involved in the fights. (*Id.* at 5-6). The plaintiff denied having any involvement in the fights and stated that there were too many people to identify anyone. (*Id.*)

The administrative appeal brief further indicates that, although the plaintiff was subsequently moved to the segregation unit and given notice that he was to have a hearing before the administrative segregation committee, he was not advised of any charges or specific information to support a finding that "he was a danger[] to the safe and secure operation of the institution/facility/center." (ECF No. 1, Attach. 1 at 3). At the hearing, the plaintiff had an inmate representative, but was still not informed of any basis for the allegations that he was a security threat, and was not able to call witnesses to rebut that allegation. The plaintiff's administrative appeal brief contends that he and his representative were told that "all requested information were [sic; was] confidential." (*Id.* at 3-4). The administrative appeal brief further states:

> The Ad Seg committee determined that the [plaintiff] would be placed in Administrative Segregation at Quilliams. Thereafter, upon questioning the Ad Seg committee as to their rationale behind the decision to Ad Seg the [plaintiff], the committee advised that he was "not being punished," but that because his failure to cooperate with the committee and due to all of their findings which was "confidential," provided by an informant(s) through and investigators that their decision was appropriate. Even to mention, to reiterate that there were no gang affiliation[s] on the [plaintiff's] inmate file, also the MOCC investigator Donnie Daniels for the record stated during the Ad Seg hearing that "*the [plaintiff] was not a gang member.*" He was never involved in any gang or group demonstration while being warehoused at the MOCC Facility to render [him] at; [sic; a] threat. The [plaintiff] was working to be a model

4

>inmate by working in the Food service department, "MDR," with the salary of $71.00 a month working up towards making an increase bonus for $81.00 a month being the vegetable prep., and working on his legal case, staying out of trouble. To this day the [plaintiff] does not know what specific acts, conducts, or offense was used against [him] that the Ad Seg committee used to determine[] his placement in Administrative Segregation.

(*Id.* at 4).

The petitioner's administrative appeal asserts that, as a result of these events, he was denied due process of law because he was not provided with adequate notice of the offense or allegations against him, and that the Administrative Segregation Committee failed to provide enough information to make a reasonable determination of the reliability of the informant's statements. (*Id.* at 6). The plaintiff further contends that his administrative segregation hearing was tantamount to a pretrial interrogation and so coercive as to be punitive in nature. (*Id.* at 8-10).

## ANALYSIS

The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits a State from depriving "any person of life, liberty, or property, without due process of law." However, as a result of his conviction and imprisonment, a prisoner's protected liberty interests are significantly reduced. As noted by the Supreme Court in *Sandin v. Conner*, "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner" and "the Due Process Clause did not itself create a liberty interest to be free from intrastate prison transfers." 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)). In the prison context, a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

5

In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the United States Court of Appeals for the Fourth Circuit reiterated that, "[i]n order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property" by governmental action. Under the reasoning in *Sandin*, the *Beverati* Court further held that neither the fact that an inmate was placed in administrative segregation, nor the general conditions therein, resulted in confinement that is atypical or posed a significant hardship on the inmate vis a vis ordinary prison life, so as to give rise to a liberty interest protected by the Due Process Clause. *Id.* at 502-504.

Following the reasoning of the Supreme Court in *Sandin*, the undersigned finds no liberty violation implicated in the decisions of prison staff which caused the plaintiff to be placed in administrative segregation, and as it is not atypical for inmates to be placed in administrative segregation for any number of reasons. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Beverati v. Smith*, 120 F.3d at 502-04 ("confinement to administrative segregation does not implicate a liberty interest"). The plaintiff has no right to notice and an opportunity to be heard prior to his re-assignment to administrative segregation, as a prisoner has no liberty interest in being housed in any particular prison facility. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976).

The plaintiff's administrative appeal brief further asserts that the fact that inmates placed in administrative segregation at MOCC must complete the "Quality of Life Program"[1] before being released back to the general population creates a liberty

---

[1] The Quality of Life Program ("QOL Program") at MOCC is a behavior-driven progressive incentive system consisting of five levels. Inmates qualify for advancement to the next level by completing required behavioral and educational programs, and remaining write-up free.

6

interest because of the length and conditions of such confinement. (ECF No. 1, Attach. 1 at 10-11). The undersigned is not persuaded by this argument.

In *Beverati*, supra, the Fourth Circuit held that Maryland inmates in administrative segregation who claimed to be surrounded by vermin, human filth and water from leaking toilets, denied air conditioning, served cold food in meager portions, denied outdoor recreation, and given <u>no</u> educational or religious services, had failed to meet the *Sandin* standard.

> Accepting Inmates' version of the conditions in administrative segregation, as we must for purposes of review of the grant of summary judgment [to defendants], we conclude that although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life.
>
> In sum, we conclude that viewing the conditions of confinement in administrative segregation that are alleged by Inmates in the light most favorable to them, the conditions do not implicate a liberty interest. And, because they possessed no liberty interest in avoiding confinement in administrative segregation, the district court properly granted summary judgment in favor of prison officials on Inmates' procedural and substantive due process claims.

500 F.3d at 504.

While the Supreme Court ruled in *Wilkinson v. Austin*, 545 U.S. 209 (2005), that the "totality of circumstances" to which inmates are subjected in the Ohio "super maximum" prison (prohibition of almost all human contact including cell-to-cell conversation, 24 hour a day lighting, one hour exercise in a small indoor room, indefinite placement, and disqualification for parole consideration) could be atypical and significant hardships which creates a liberty interest and its attendant due process requirements, the plaintiff has not alleged that he is subject to such arduous conditions. At most, the plaintiff conclusively asserts that "the average length of confinement of a

7

prisoner placed in Ad Seg is approximately 18 months or five hundred and forty (540) days." (ECF No. 1, Attach. 1 at 10). Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a facially plausible due process claim against the defendants.

The plaintiff has also alleged that his placement in administrative segregation was essentially punishment. Thus, to the extent that the plaintiff may be attempting to raise a claim concerning cruel and unusual punishment under the Eighth Amendment of the United States Constitution, the undersigned will also address the standard for such claims.

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.*, at 833.

Moreover, to sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Id.*, at 834. (Citations omitted.) The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk

8

>to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id., at 837.

The undersigned further proposes that the presiding District Judge **FIND** that the plaintiff's Complaint does not in any way allege any specific conduct by the defendants that would rise to the level of deliberate indifference or cruel and unusual punishment under the Eighth Amendment.

Furthermore, the plaintiff has not alleged any specific facts to support a finding that his rights under either the Fourth or Fifth Amendments have been violated.

The holdings in *Sandin*, *Beverati*, *Wilkinson* and *Farmer* establish that the plaintiff has failed to state a facially plausible claim in violation of either the Eighth or Fourteenth Amendments. Furthermore, the plaintiff's Complaint contains only conclusory statements and, in fact, contains no specific allegations against defendants Ballard and Rubenstein at all. Accordingly, pursuant to the holdings in *Twombly* and *Iqbal*, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted.

Because the plaintiff's Complaint fails to state a claim, the undersigned further proposes that amendment of the Complaint to add additional defendants who were allegedly present at the plaintiff's administrative segregation hearing would be futile. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that there is no basis to grant the plaintiff's Motion to Amend (ECF No. 12) to enable the plaintiff to add other defendants who were present at his administrative segregation hearing.

Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the plaintiff's Complaint (ECF No. 1) under 28 U.S.C. § 1915A, **DENY** his Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1), and **DENY** his Motion to Amend (ECF No. 12).

The plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the presiding District Judge.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to the plaintiff.

February 24, 2015

Dwane L. Tinsley
United States Magistrate Judge